**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:10-cv-00117-JWS |
| | ) | |
| v. | ) | |
| | ) | **CONSENT DECREE** |
| GRANITE CONSTRUCTION COMPANY, | ) | |
| successor-in-interest to WILDER | ) | |
| CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## TABLE OF CONTENTS

| I. | INTRODUCTION | 3 |
| II. | JURISDICTION AND VENUE | 4 |
| III. | DEFINITIONS | 4 |
| IV. | COMPLIANCE PROGRAM | 8 |
| V. | CIVIL PENALTY | 11 |
| VI. | GENERAL PROVISIONS | 11 |
| VII. | EFFECT OF DECREE | 19 |
| VIII. | STIPULATED PENALTIES | 21 |
| IX. | DISPUTE RESOLUTION | 24 |
| X. | FORCE MAJEURE | 26 |

2

## I. INTRODUCTION

A. The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed the Complaint in this matter alleging that Wilder Construction Company ("Wilder") violated Section 301(a) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1311(a), due to its alleged violations of the Act's requirements governing the discharge of storm water. The alleged violations include claims that Wilder violated a Federal Storm Water Construction General Permit, which was applicable during the pendency of the construction activities identified in the Complaint.

B. On or about January 1, 2008, Wilder became a wholly-owned subsidiary of Granite Construction Company ("Granite"). On or about April 1, 2008, Wilder was merged into Granite and ceased to exist.

C. Granite neither admits nor denies the allegations in the Complaint against Wilder and nothing in this Decree shall constitute or be construed as an admission of liability, fact or law, or of any wrongdoing on the part of Wilder or Granite.

D. The United States and Granite, as Wilder's successor-in-interest, have consented to the entry of this Decree without trial of any issues.

E. The parties to this Consent Decree agree that this Decree is not intended to be used in subsequent litigation to establish either a point of law or fact; provided, however, that the foregoing shall in no way affect the binding nature of this Decree or the parties' respective obligations pursuant to this Decree, nor shall the parties be precluded from establishing the existence or content of this Decree in either subsequent litigation or subsequent proceedings in this lawsuit where the terms or existence of the Decree may be at issue, including, without

3

limitation, any action to enforce the terms of this Decree. This Decree does not create any rights, implied or otherwise, in any third parties, not specifically identified.

F.      These parties recognize, and this Court finds by entering this Consent Decree, that the parties have negotiated this Consent Decree in good faith, that implementation of the Consent Decree will avoid prolonged and complicated litigation between these parties, and that it is fair, reasonable, and in the public interest

NOW, THEREFORE, before the taking of any testimony, upon the pleadings, without adjudication or admission of any issue of fact or law and upon consent and agreement of the parties, it is hereby ORDERED, DECREED, and ADJUDGED as follows:

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of these actions and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

2.      Venue is proper in the District of Alaska pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), because Defendant conducts business in this District, the subject properties are located in this District, and the causes of action alleged herein arose in this District.

3.      The Complaint states claims upon which relief can be granted pursuant to Sections 301, 309, 402 and of the CWA, 33 U.S.C. §§ 1311, 1319, and 1342.

## III. DEFINITIONS

4.      Except as specifically provided in this Decree, definitions for the terms used in this Decree shall be incorporated from the Clean Water Act and the regulations promulgated

4

pursuant to that Act. Whenever terms listed below are used in this Decree the following definitions apply:

a.  "Active Project" means any Project for which Wilder has filed a Notice of Intent for coverage under a CGP, as defined herein, but has not yet filed a Notice Of Termination with the relevant permitting authority.

b.  "AK-CESCL training program" means Alaska Certified Erosion and Sediment Control Lead Storm Water Training Program developed under a Memorandum of Understanding among the Associated General Contractors of Alaska, Associated Builders and Contractors of Alaska, Alaska Department of Transportation & Public Facilities, U.S. Army Corps of Engineers, Alaska Department of Environmental Conservation ("ADEC"), Alaska Department of Natural Resources, Alaska Railroad Corporation, and the Municipality of Anchorage. An outline of the Alaska CESCL training program is attached as Appendix A.

c.  "Best Management Practices" or "BMPs" shall have the meaning ascribed to it in the CGP.

d.  "CGP" means either the Federal Storm Water Construction General Permits issued by EPA and published on July 1, 2003 (68 Fed. Reg. 39087 - 39091) and any reissuance thereof, or a stormwater construction general permit issued by ADEC after the state is delegated NPDES permitting authority for stormwater discharges, whichever is applicable.

e.  "CWA" means the Clean Water Act as amended 33 U.S.C. §§ 1251-1387 (2009).

5

f.     "Construction Activities" refers to construction activities regulated under the CGP, and includes the disturbance of soils associated with clearing, grading, or excavating activities, or other construction-related activities.

g.     "Final Stabilization" means all Construction Activities at a Project have been completed and either of the two following criteria are met:

(1)     a uniform, evenly distributed, perennial vegetative cover with a density of 70% of the native background vegetative cover for the areas established on all unpaved areas and areas not covered by permanent structures has been achieved; or

(2)     equivalent permanent stabilization measures have been employed.

h.     Instances of noncompliance with the CGP that "may endanger health or the environment" means the following events, occurrences, or conditions:

(1)     an unanticipated bypass which exceeds any effluent limitation in the permit;

(2)     any upset which exceeds any effluent limitation in the permit;

(3)     violation of a maximum daily discharge limitation for any of the pollutants listed by EPA in the permit to be reported within 24 hours; or

(4)     any discharge that exceeds a State of Alaska water quality standard.

i.     "Project" means any location in the State of Alaska that is subject to construction activities under a contract entered into by Granite and the Alaska Department of Transportation & Public Facilities ("AKDOT&PF"), where

6

(1)    Granite has operational control over construction plans and specifications, including the ability to make modifications to those plans and specifications; or

(2)    Granite has operational control as defined in the CGP of day-to-day activities which are necessary to ensure compliance with a SWPPP or other CGP conditions; and

(3)    Construction Activities are greater than or equal to one acre or which is otherwise subject to the NPDES storm water construction regulations set forth at 40 C.F.R. § 122.26(b)(14)(x) or 40 C.F.R. § 122.26(b)(15).

j.    "Sites" means the Kenai River Bridge project undertaken in Soldotna, Alaska under permit number AKR10BF46 and commencing in March 2005, and the Abbott Loop Extension project undertaken in Anchorage, Alaska under permit number AKR10BM02, and commencing in November, 2005.

k.    "SWPPP" means a Storm Water Pollution Prevention Plan as described in the CGP.

l.    "SWPPP Manager" means the Granite employee who has primary responsibility for CGP inspections, SWPPP updates, and SWPPP amendments at an Active Project.

m.    "SWPPP Personnel" means Granite employees or subcontractors who are primarily responsible for the development or final approval of a SWPPP for any Project, who conduct CGP inspections at an Project, or who supervise the implementation, maintenance, or modification of BMPs at any Project.

7

n.     "Wilder" means Wilder Construction Company, a company incorporated in the State of Washington that merged with Granite on or about April 1, 2008. Granite is the surviving corporation of this merger.

## IV. COMPLIANCE PROGRAM

5.     All Granite employees or subcontractors who meet the above definition of "SWPPP Personnel" at any Project must attend and be certified in the AK-CESCL training program, or demonstrate completion of a course that meets or exceeds the requirements of the AK-CESCL training program, within ninety (90) days of entry of this Decree, and before performing their duties at any Project. During the term of this Decree, all new SWPPP Personnel assigned to any Project must comply with these training requirements within ninety (90) days of assuming that position and before performing their duties at any Project. During the term of this Decree, all SWPPP Personnel must be re-certified in the AK-CESCL training program or equivalent every three (3) years.

6.     For purposes of Paragraph 5, courses that meet or exceed the requirements of the AK-CESCL training program include, but are not limited to: Washington Department of Ecology Certified Erosion and Sediment Control Lead; CPESC, Inc.'s Certified Professional in Erosion and Sediment Control; and CISEC Inc.'s Certified Inspector in Sediment and Erosion Control.

7.     During the effective term of this Consent Decree, Granite must provide to the NPDES Compliance Officer in Paragraph 26, oral 24-hour reports and five-day written reports identifying each instance of noncompliance with the CGP that may endanger health or the environment, pursuant to the "Twenty-four Hour Reporting" provisions described in the CGP. In addition to the information required by the CGP, each oral and written endangerment report shall include the name of the Project at which the noncompliance occurred and the tracking

8

number assigned to Granite at the Project. The certification requirements described in Paragraph 27 do not apply to endangerment reports.

8. Granite must provide a report to the NPDES Compliance Officer specified in Paragraph 26 (Notification) that lists all Active Projects. The report may be submitted by electronic mail. This report must be received by the NPDES Compliance Officer no later than thirty (30) days following the date of entry of this Decree. After the first report, Granite shall report to the NPDES Compliance Officer on a quarterly (3 calendar month) basis a list of all Projects for which Granite has awarded, let, or otherwise entered into a construction contract in the State of Alaska and for which Construction Activities have commenced but Final Stabilization has not been achieved. Reports shall be due on the 15th of each month following the end of each quarter. Each report required by this paragraph must include the following information for each Active Project:

        a.    Granite's CGP tracking number;

        b.    the name of Granite's sub-contractor where applicable (and, if available, their CGP number(s) if different than Granite's CGP number);

        c.    the location of the Project including the borough, nearest town, and physical address (or nearest milepost or intersection if a physical address is not available);

        d.    the contact information for the SWPPP Manager (including telephone number and/or e-mail address);

        e.    the start date of Construction Activities;

        f.    the estimated date for the termination of Construction Activities and Final Stabilization; and

        g.    a certification in accordance with Paragraph 26 of this Decree.

9

For the first report due to EPA under this paragraph, if EPA determines that the quarterly report is deficient in any respect, EPA will notify Granite in writing. Granite shall have the opportunity to cure any defects in the first report due to EPA under this paragraph, but must do so no later than thirty (30) days after receiving notice of any deficiencies.

9.      Granite must submit an annual report to the EPA representative(s) specified in Paragraph 26 (Notification), to be received by EPA no later than February 15th, summarizing all actions taken to comply with the terms of this Consent Decree and certifying Granite's compliance with all requirements under the Consent Decree in the previous calendar year and/or identifying all violations of the Consent Decree during the previous calendar year. If a certification of compliance is to be provided (in the absence of any noncompliance), this certification must include individual statements of compliance for Paragraphs 5 through 8. If there were instances of noncompliance with the Consent Decree, the annual report must include a list or spreadsheet identifying all such instances, along with the date of each violation, the name and CGP tracking number for the Project at which the violation occurred (if applicable), the date when Granite came back into compliance, and a description of actions taken to resolve the noncompliance. The report shall also include a list of all Active Projects during the previous calendar year, along with each Project's CGP tracking number and the names, CESCL certification numbers (if applicable) and last training dates and hire or start dates on the Project, of each of the Granite and contractor personnel associated with each Project who are required to be training under Paragraph 5 of this Consent Decree. The Annual Report must be submitted in hard copy or electronically as an attachment to electronic mail. If EPA determines that the Annual Report is deficient in any respect, EPA will notify Granite in writing. Granite shall have

10

the opportunity to cure any defects, but must do so no later than thirty (30) days after receiving notice of any deficiencies.

## V. CIVIL PENALTY

10.     Civil Penalty : Within thirty (30) days after entry of this Decree, Granite must pay a civil penalty of two-hundred fifty thousand dollars ($250,000).

11.     Payments to be Made Solely by Granite:   Granite shall be responsible for payment of the civil penalty paid under this Consent Decree and shall not seek payments, reimbursement, indemnification or insurance coverage for this civil penalty from any contractor, subcontractor, third party or agency of the United States.

12.     Method of Payment : The two-hundred fifty thousand dollar ($250,000) penalty must be made payable to the "Treasurer of the United States" by Electronic Funds Transfer ("EFT" or wire transfer) to the United States Department of Justice lock box bank, referencing DOJ case number 90-5-1-1-08977/1 and CDCS File Number_____. A copy of the confirmation of the wire transfer must be forwarded to the United States at the addresses specified in Paragraph 26 (Notification).

## V. GENERAL PROVISIONS

13.     Continuing Jurisdiction of the Court:  The Court shall retain jurisdiction to enforce the terms and conditions of this Decree, to resolve disputes arising hereunder and for such other action as may be necessary or appropriate for construction or execution of the Decree. During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the Consent Decree.

11

14. <u>Parties Bound</u>:  In accordance with the provisions of Federal Rule of Civil Procedure 65, the provisions of this Decree shall apply to and be binding upon the United States and Granite.

15. <u>Not an Admission</u>:  Nothing in this Consent Decree shall constitute an admission of fact or law by the United States or Granite.

16. <u>Costs of Suit</u>:  Each party to this Consent Decree shall bear its own costs and attorneys' fees in this action.

17. <u>Granite Responsibility</u>:  The obligations of this Consent Decree shall apply to and be binding upon Granite, its officers, directors, agents, employees and servants, and their successors and assigns.  In any action to enforce this Decree, Granite shall not assert as a defense the failure of its officers, directors, agents, employees, servants, successors, assigns, to take any actions necessary to comply with this Decree.

18. <u>No Warranty by the Plaintiff</u>:  The United States does not, by its consent to entry of this Decree, warrant or aver in any manner that Granite's compliance with this Decree will result in compliance with the provisions of applicable federal or state laws, regulations, or CGP or 404 Permit conditions.  Granite shall remain solely responsible for compliance with this Decree, the Clean Water Act, any permit, and any other applicable state, federal, or local law or regulation.

19. <u>Final Judgment</u>:  Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment between and among the United States, Wilder, and Granite.

12

20. <u>Purpose of Decree</u>: It is the express purpose of this Decree to further the objectives of the Clean Water Act as well as regulations and permits issued pursuant to that Act. All obligations in this Decree shall have the objective of causing Granite to be and remain in full compliance with the Act, the regulations and permits issued pursuant to the Act, as well as state laws, regulations, and permits authorized pursuant to the Act.

21. <u>Right of Entry</u>: Until termination of this Decree, the United States and its representatives, contractors, consultants and attorneys shall each have the authority to enter at all reasonable times and upon presentation of credentials, any Project in the State of Alaska or any location at which records relating to this Decree are kept for the purposes of:

      a.      monitoring Granite's compliance with this Decree;

      b.      verifying any data or information submitted by Granite pursuant to this Decree;

      c.      reviewing and copying any records required to be kept by Granite pursuant to this Decree; and

      d.      inspecting an evaluating Granite's restoration and/or mitigation activities.

22. <u>No Limitation on Other Rights of Entry</u>: Nothing in Paragraph 21 (Right of Entry) or any other provision of this Decree shall be construed to limit any statutory right of entry or access or other information gathering authority pursuant to any federal, state, or local law.

23. <u>Preservation of Records</u>: In addition to complying with any other applicable local, state, or federal records preservation requirements, until one calendar year after termination of this Decree, Granite shall preserve at least one legible copy of all documents in its

13

possession, custody, or control that relate in any manner to the performance of Granite's obligations under this Decree. Within thirty (30) days of retaining or employing any agent, consultant, or contractor for the purpose of carrying out the terms of this Decree, Granite shall enter into an agreement with any such agent, consultant, or contractor requiring such person to provide Granite a copy of all documents relating to the performance of Granite's obligations under this Decree. No documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

24.    Authority to Sign Decree: The undersigned representative of Granite certifies that he or she is authorized to enter into this Decree and to execute and legally bind Granite, as Wilder's successor-in-interest, to the terms and conditions of this Decree and meets the requirements for authorized signatory found in 40 C.F.R. § 122.22.

25.    Designation of Agent for Service: Granite shall identify on the attached signature page the name and address of an agent who is authorized to accept service of process by mail on Granite's behalf with respect to all matters arising under or relating to this Decree.

26.    Notification:

a.    When written notification or communication is required by the terms of this Decree, such notification or communication shall be addressed to the following individuals at the addresses specified below (or to such other addresses as may be designated by written notice to the parties):

14

As to the United States:

For DOJ:

Chief, Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Ph:     202.514.5271
Fax:    202.514.0097
Reference Case No. 90-5-1-1-08977/1

David F. Askman, Senior Counsel
U.S. Department of Justice
1961 Stout Street - 8th Floor
Denver, CO 80294
david.askman2@usdoj.gov
Ph:     303.844.1381
Fax:    303.844.1350

For EPA:

Ankur Tohan
Assistant Regional Counsel
U.S. EPA, Region 10
1200 6th Ave, Suite 900 (ORC-158)
Seattle, Washington 98101
tohan.ankur@epa.gov
Ph:     206.553.1796

Kristine Karlson
NPDES Compliance Officer
U.S. EPA, Region 10
1200 6th Ave, Suite 900 (OCE-133)
Seattle, Washington 98101
karlson.kristine@epa.gov
Ph:     206.553.0290

As to Granite:

Joe Spink
Granite Construction Company
11301 Lang Street
Anchorage, AK  99515
Ph:     907.344.2593
Fax:    907.344.1562
Joe.Spink@gcinc.com

        b.      Notifications to or communications with Granite or the United States shall

be deemed submitted on the date they are postmarked and sent by certified mail, return receipt

requested or by date/time stamp if submitted by electronic mail. Notifications may be made by

overnight or U.S. Express mail with delivery confirmation.

15

27.     Certification of Reports and Submissions: Except as otherwise expressly

provided in this Decree, any report or other document submitted by Granite pursuant to this

Decree which makes any representation concerning compliance or noncompliance with any

requirement of this Decree shall be certified by an Authorized Officer of Granite. The

certification shall be in the following form:

> I certify under penalty of law that this document and all attachments were prepared under
> my direction or supervision in accordance with a system designed to assure that qualified
> personnel properly gathered and evaluated the information submitted. Based on my
> inquiry of the person or persons who manage the system, or those persons directly
> responsible for gathering the information, or the immediate supervisor of such person(s),
> the information submitted is, to the best of my knowledge and belief, true, accurate, and
> complete. I am aware that there are significant penalties for submitting false information,
> including the possibility of fine and imprisonment for knowing violations.

Signature:_____
Name:      _____
Title:       _____
Date:       _____

28.     Entire Agreement: This Decree is the final, complete, and exclusive agreement

between the Parties. The Parties acknowledge that there are no inducements, promises,

representations, agreements, or understandings relating to the settlement other than those

expressly contained in this Decree.

29.     Modification: The deadlines set forth in this Decree may be modified by this

Court in accordance with Section IX (Dispute Resolution) or by written agreement of the parties

and notification to the Court. Modifications by agreement of the parties shall be effective ten

(10) days after the date the notice is filed with the Court unless otherwise ordered by the Court.

With respect to all other provisions of this Decree, except as expressly provided in Section IX

(Dispute Resolution), there shall be no modification of this Decree without written agreement of

16

all the parties to this Decree and approval by the Court. Unanticipated or increased costs or expenses associated with the implementation of actions called for by this Decree and economic hardship or changed financial circumstances shall not serve as a basis for modifications of this Decree.

30.    Public Notice: The parties acknowledge and agree that the final approval and entry of this Decree is subject to the requirements of 28 C.F.R. § 50.7, which provides that notice of proposed consent decrees be given to the public and that the public shall have at least thirty (30) days in which to make any comments. The United States may withhold or withdraw its consent to this Decree based on such comments.

31.    Agreement to Entry of Decree: Granite hereby agrees not to oppose entry of this Decree by this Court or to challenge any provision of this Decree.

32.    Termination of Decree:

a.    No sooner than three (3) years after entry of this Decree, Granite may request the United States' Department of Justice consent to termination of any or all of the requirements of this Decree, including any or all of the Compliance Program requirements in Paragraph 5, Paragraph 6, Paragraph 7, Paragraph 8, and Paragraph 9.

b.    In seeking the United States' consent under this Paragraph 32, Granite shall demonstrate that:

(1)    Granite has paid all monies, civil penalties, interest, and stipulated penalties due under this Decree;

(2)    Granite is in compliance with each portion of the Consent Decree for which Granite seeks termination;

17

(3) For each portion of the Decree for which Granite seeks termination, as of the date Granite provides any notice or request to terminate, EPA has not provided Granite with any Notice of Dispute invoking the Dispute Resolution provisions of this Decree and there are no unresolved matters subject to dispute resolution pursuant to Section IX (Dispute Resolution); and

(4) No enforcement action under this Decree is pending regarding the portion of the Consent Decree for which Granite seeks termination. For the purposes of this provision, an enforcement action means any CWA 309(a) order issued, or any administrative or judicial action that EPA files, to enforce any CWA provision referenced in this Decree.

d. The United States shall notify Granite in writing within thirty (30) days of receiving a request to terminate by Granite whether it does or does not object to the termination of the Decree or any portion of it. If the United States does not object, then the parties shall jointly file a motion to terminate with the Court. If the United States objects to such request, the parties will work together for a period of at least thirty (30) days in an effort to informally resolve any disputes. The Decree shall remain in effect pending resolution of the dispute by the parties, or, ultimately, the Court.

d. The Court may terminate this Decree or any portion thereof after Granite has filed with the Court a motion to terminate the Decree and served a copy of that motion upon the United States, so long as either (1) Granite's motion to terminate the Decree is accompanied by a true and correct copy of the United States' notice that it does not object to the termination, (2) Granite's motion to terminate the Consent Decree is accompanied by a true and correct

18

certification by Granite that the United States did not respond to Granite's request to terminate, or (3) Granite prevails in any motion it files to terminate the Decree.

     e.    Any dispute involving Granite's right to terminate the Decree or any portion thereof shall not be subject to the dispute resolution process of Section IX (Dispute Resolution).

## VII. EFFECT OF DECREE

33.    <u>Scope of Consent Decree</u>: This Consent Decree shall constitute a complete and final settlement of all civil claims for injunctive relief and civil penalties alleged in the Complaint against Wilder or Granite under CWA section 301 concerning the Sites.

34.    <u>Covenants Not to Sue by Plaintiff</u>: In consideration of the payment of the penalty required by Paragraph 10 (Civil Penalty) and the full and satisfactory compliance by Granite with the terms of Paragraphs 5 through 9 (Compliance Program) of this Decree, the United States hereby covenants not to sue or take administrative action against Wilder or Granite pursuant to the Clean Water Act for civil violations or alleged civil violations of Clean Water Act sections 301 and 402, 33 U.S.C. §§ 1311, 1342 at the Sites as alleged in the Complaint through the date of lodging of this Decree.

35.    <u>No Effect on Third Parties</u>: Except as expressly provided in Paragraph 10 (Payments to be Made Solely by Granite), this Decree does not limit or affect the rights of Wilder or Granite or of the United States against any third parties not party to this Decree, nor does it limit the rights of third parties not party to this Decree against Wilder or Granite, except as otherwise provided by law. This Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

19

36. United States' Reservations of Rights:

    a.    The United States reserves all rights not expressly waived in this Decree.

    b.    The United States reserves all rights and remedies, legal and equitable, available to enforce the provisions of this Decree and applicable law.

    c.    The United States reserves the right to seek and obtain criminal sanctions against any person, including Granite.

    d.    The United States reserves the right to undertake any action against any person, including Granite in response to conditions which may present an imminent and substantial endangerment to the public health or welfare or the environment.

37. Wilder and Granite's Reservation of Rights: Except as provided by the express terms of this Decree, Wilder and Granite reserve any rights or defenses available to them in any future action brought by the United States pursuant to the Clean Water Act or any other statutes, regulations, or rules.

38. Not a Permit Modification: This Decree is neither a permit nor a modification of existing permits under any federal, state, or local law, and in no way relieves Granite of its responsibilities to comply with any applicable federal, state, or local law, regulation or permit.

39. Injunction Regarding Future Discharges: Except as in accordance with this Consent Decree, Granite is enjoined from discharging any pollutant into waters of the United States, unless such discharge complies with the provisions of the CWA and its implementing regulations.

40. Agency Discretion: Nothing in this Consent Decree shall limit the ability of EPA to modify, suspend, revoke or deny any CGP issued under Section 402 of the CWA, 33 U.S.C. § 1342.

## VIII. STIPULATED PENALTIES

41.     Stipulated Penalty Amounts: If EPA determines that Granite has failed to comply fully and timely with the requirements of this Decree, Granite shall pay stipulated penalties in the following amounts:

a.      for a failure to timely train an employee or subcontractor assigned to a Project in accordance with Paragraph 5, $750.00 per person for each missed deadline. This $750.00 per person violation shall continue to accrue for every fourteen (14) day period that passes in which the person fails to timely receive the applicable training;

b.      for failure to provide a timely oral report of violations or for a deficient oral reports in accordance with Paragraph 6(a) - (e) - $750.00 for the first day the report is late or deficient, and then an additional $750.00 for every fourteen (14) day period that passes without the required information being provided, but no stipulated penalty under this subpart shall continue to accrue once a written Endangerment Report has been submitted to EPA;

c.      for failure to provide a timely written Endangerment report of violations or for a deficient written Endangerment report of violations in accordance with Paragraph 7 - $750.00 for the first day the report is late or deficient, and then an additional $750.00 for every fourteen (14) day period that passes without the required information being provided;

d.      for a failure to provide a quarterly report or for a deficient quarterly report as required by Paragraph 8 - $750.00 per day the report is late or deficient; and

e.      for a failure to submit an annual report or a deficient annual report as required by per Paragraph 9 - $750.00 per day the report is late or deficient.

21

42.  Payment of Stipulated Penalties:  Upon Granite's receipt from the United States of a written demand for payment of the penalties, all penalties owed to the United States under this Section shall be due and payable within thirty (30) days of Granite's receipt from the United States of a demand for payment of the penalties, unless Granite invokes the procedures under Section IX (Dispute Resolution).  Granite shall forward the amount due by Electronic Funds Transfer ("EFT") to the United States Department of Justice lockbox bank referencing DOJ case number 90-5-1-1-08977/1 and CDCS File Number _____ in accordance with instructions provided by the United States upon entry of this Decree.  Any EFTs received at the United States Department of Justice lockbox bank after 11:00 a.m. (Eastern Time) will be credited on the next Business Day.  After payment, Granite shall mail a cover letter specifying the amount and date of payment, civil docket number and reason for payment, to the United States in accordance with Paragraph 26 (Notification).

43.  Granite may request, in writing, that the United States waive stipulated penalties which have been assessed pursuant to Paragraph 42.  The United States may, in its sole discretion, waive such claims.

44.  Accrual of Stipulated Penalties:  Except as otherwise provided in this Paragraph, stipulated penalties shall begin to accrue on the day after performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  Except as provided in the third and fourth sentences of this paragraph, stipulated penalties for filing a deficient report shall begin to accrue on the day when EPA notifies Granite of the deficiency.  Stipulated penalties for filing a deficient Annual Report shall begin to accrue thirty (30) days after EPA notifies Granite of the

22

deficiency, unless Granite has cured the deficiencies within thirty (30) days in accordance with Paragraph 8, above, in which case no stipulated penalties shall accrue. With regard to the first quarterly report only, stipulated penalties for filing a deficient report shall begin to accrue thirty (30) days after EPA notifies Granite in writing of the deficiency, unless Granite has cured the deficiencies within thirty (30) in accordance with Paragraph 9, above, in which case no stipulated penalties shall accrue. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Decree. Except as specifically provided herein, stipulated penalties shall accrue regardless of whether the United States has notified Granite of a violation.

45. <u>No Effect on Obligation to Comply</u>: The payment of penalties shall not alter in any way Granite's obligation to comply with the requirements of this Decree.

46. <u>Effect of Dispute Resolution</u>: Penalties shall continue to accrue during any dispute resolution period, but need not be paid until the following:

        a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, Granite shall pay accrued penalties determined to be owing to the United States within fifteen (15) days of the agreement or the receipt of EPA's decision or order;

        b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Granite shall pay all accrued penalties determined by the Court to be owed within thirty (30) days of receipt of the Court's decision or order, except as provided in subparagraph (c) of this Paragraph;

        c. If the Court's decision is appealed by any party, Granite shall pay all accrued penalties determined by the District Court to be owing into an interest-bearing escrow account within thirty (30) days of receipt of the Court's decision or order. Penalties shall be paid

23

into this account as they continue to accrue, at least every thirty (30) days. Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the United States or to Granite to the extent that they prevail.

47.     Interest on Late Payment: If Granite fails to pay stipulated penalties when due, Granite shall pay interest accrued at the rate established by the Secretary of the Treasury under 31 U.S.C. § 3717 beginning upon the day the stipulated penalties were due.

48.     Non-Exclusivity of Remedy: Stipulated penalties are not the United States' exclusive remedy for violations of this Decree. The United States expressly reserves the right to seek any other relief it deems appropriate, including but not limited to, action for statutory penalties, contempt, or injunctive relief against Granite. However, the amount of any statutory penalty assessed for a violation of this Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Decree for the same violation.

## IX.  DISPUTE RESOLUTION

49.     Exclusive Remedy: Unless otherwise expressly provided for in this Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under this Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Granite that have not been disputed in accordance with this Section.

50.     Informal Dispute Resolution: Any dispute subject to dispute resolution under this Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen on the day Granite hand delivers the United States a written Notice of Dispute or on the day following delivery by overnight courier, or three days following delivery by U.S. Mail.

24

Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed sixty (60) days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within forty-five (45) days after the conclusion of the sixty (60) day informal negotiation period, Granite seeks to petition the Court as set forth in Paragraph 51 (Petitions to the Court).

51.   Petitions to the Court: In the event that the parties cannot resolve a dispute by informal negotiations as set forth above, the following procedures shall control:

a.   Granite may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion shall contain a written statement of Granite's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Decree.

b.   The United States shall respond to Granite's motion within forty-five (45) days of receipt of the motion, unless the parties stipulate otherwise.

c.   Granite may file a reply memorandum within thirty (30) days of receipt of the United States' response.

d.   In any dispute under this Paragraph, Granite shall bear the burden of demonstrating that its position complies with this Decree and the Clean Water Act and that Granite is entitled to relief under applicable law. The United States reserves the right to argue (a) that its position is reviewable only on the administrative record and (b) shall be upheld unless

25

arbitrary and capricious or otherwise not in accordance with law. Granite reserves the right to argue that its position is based on a reasonable interpretation of a statute, regulation, or permit, or a reasonable interpretation of this Decree and that the United States' litigation position is not entitled to any deference.

52.     Effect on Other Obligations: The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Granite under this Decree not directly in dispute, unless the United States agrees in writing or the Court orders otherwise.

53.     Computation of Time: The computation of any period of time set forth in this Section VIII shall be governed by Rule 6 of the Federal Rules of Civil Procedure.

## X.  FORCE MAJEURE

54.     Definition of Force Majeure: Granite shall perform the actions required under this Decree within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by a Force Majeure event. A "Force Majeure Event" is any event beyond the control of Granite, its contractors, or any entity controlled by Granite that delays the performance of any obligation under this Decree despite Granite's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Granite's financial inability to perform any obligation under this Decree. Failure to apply for a required CGP or 404 Permit or approval or to provide in a timely manner all information required to obtain a CGP or 404 Permit or approval that is necessary to meet the requirements of

26

this Decree, or failure of Granite to approve contracts shall not, in any event, be considered Force Majeure events.

55.     Required Notification for Force Majeure: Granite shall notify the United States orally and by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time Granite first knew of, or in the exercise of reasonable diligence under the circumstances should have known of, any event which might constitute a Force Majeure event. For all obligations under this Consent Decree, Granite shall make the notification required by this Paragraph to the NPDES Compliance Officer in Paragraph 26 (Notification); if the NDPES Compliance Officer is unavailable by telephone, Granite may satisfy the telephone notice requirement by leaving a message or sending an email stating that Granite had called to notify EPA pursuant to this Paragraph. The United States may designate an alternative representative to receive oral notification at its discretion by sending Granite a written designation in accordance with Paragraph 26 (Notification). The written notice Granite submits pursuant to this Paragraph shall indicate whether Granite claims that the delay should be excused due to a Force Majeure event. The notice shall describe in detail the basis for Granite's contention that it experienced a Force Majeure delay, the anticipated length of the delay, the precise cause or causes of the delay, the measures taken or to be taken to prevent or minimize the delay, and the timetable by which those measures will be implemented. Granite shall adopt all reasonable measures to avoid or minimize such delay. Failure to so notify the United States shall render this Section X (Force Majeure) void and of no effect as to the event in question, and shall waive Granite's right to obtain an extension of time for its obligations based on such event.

27

56.     <u>Procedures for Extension</u>:  If the United States finds that a delay in performance is, or was, caused by a Force Majeure event, the United States shall extend the time for performance, in writing, for a period to compensate for the delay resulting from such event, and stipulated penalties shall not be due for such a period.  In proceedings on any dispute regarding a delay in performance, the dispute resolution provisions of Section VIII (Dispute Resolution) shall apply, and Granite shall have the burden of proving that the delay is, or was, caused by a Force Majeure event and that the amount of additional time requested is necessary to compensate for that event.

57.     <u>Effect on Other Obligations</u>:  Compliance with a requirement of this Decree shall not by itself constitute compliance with any other requirement. An extension of one compliance date based on a particular event shall not automatically extend any other compliance date. Granite shall make an individual showing of proof regarding the cause of each delayed incremental step or other requirement for which an extension is sought.

SO ORDERED THIS ____4____ DAY OF August , 2010

_____
UNITED STATES DISTRICT JUDGE

28

WE HEREBY CONSENT to the entry of the Decree in <u>United States v. Granite</u>

<u>Construction Company</u> subject to the public notice requirements of 28 C.F.R. §50.7.

FOR THE UNITED STATES OF AMERICA:

Date: ___5/26/10___        *Ignacia S. Moreno*
                           IGNACIA S. MORENO
                           Assistant Attorney General
                           Environment and Natural Resources Division
                           U.S. Department of Justice
                           Washington, DC 20530


Date: ___6 | 1 | 10___

                           DAVID F. ASKMAN
                           Senior Counsel
                           Environmental Enforcement Section
                           Environment and Natural Resources Division
                           U.S. Department of Justice
                           1961 Stout Street, 8th Floor
                           Denver, CO 80294
                           (303) 844-1381


Date: ___6 | 1 | 10___

                           RICHARD L. POMEROY
                           Assistant U.S. Attorney
                           District of Alaska
                           222 West 7th Avenue, Room 253
                           Anchorage, Alaska 99513


Date: _____

                           ADAM KUSHNER, Director
                           Office of Enforcement and Compliance Assurance
                           U.S. Environmental Protection Agency
                           1200 Pennsylvania Avenue, N. W.
                           Washington, DC 20460

29

WE HEREBY CONSENT to the entry of the Decree in <u>United States v. Granite</u>

<u>Construction Incorporated, successor-in-interest to Wilder Construction Co.</u> subject to the

public notice requirements of 28 C.F.R. §50.7.

FOR THE UNITED STATES OF AMERICA:


Date: _____    _____
                                IGNACIA S. MORENO
                                Assistant Attorney General
                                Environment and Natural Resources Division
                                U.S. Department of Justice
                                Washington, DC 20530



Date: _____    _____
                                DAVID F. ASKMAN
                                Senior Counsel
                                Environmental Enforcement Section
                                Environment and Natural Resources Division
                                U.S. Department of Justice
                                1961 Stout Street, 8th Floor
                                Denver, CO 80294
                                (303) 844-1381



Date: _____    _____
                                RICHARD L. POMEROY
                                Assistant U.S. Attorney
                                District of Alaska
                                222 West 7th Avenue, Room 253
                                Anchorage, Alaska 99513



Date: 5/27/10                   _____
                                for ADAM M. KUSHNER
                                Office Director
                                Office of Civil Enforcement
                                Office of Enforcement and Compliance Assurance
                                United States Environmental Protection Agency
                                1200 Pennsylvania Ave, N.W.
                                Washington, DC 20460

WE HEREBY CONSENT to the entry of the Decree in United States v. Granite

Construction Company subject to the public notice requirements of 28 C.F.R. §50.7.

FOR GRANITE CONSTRUCTION COMPANY, successor-in-interest to WILDER

CONSTRUCTION COMPANY

Date:    June 1, 2010

JAMES H. ROBERTS
Executive Vice President and Chief Operating Officer
Granite Construction Company
585 West Beach Street
Watsonville, CA 95076

30

# Appendix A

**APPENDIX A**
**AK-CESCL Training**

## <u>Course Elements</u>:

**Module I.**   **Erosion and Sedimentation Impacts**

     A.    Examples/Case studies

**Module II.**   **Erosion and Sedimentation Processes**

     A.    Definitions
     B.    Types of erosion
     C.    Sedimentation
          1.    Basic settling concepts
          2.    Problems with clays/turbidity

**Module III.**   **Factors Influencing Erosion Potential**

     A.    Soil
     B.    Vegetation
     C.    Topography
     D.    Climate

**Module IV.**   **Alaska Climate Issues and BMPs**

     A.    Winter Shutdown
     B.    Dormant seeding
     C.    Thermal Degradation
     D.    Freeze up/Breakup
     E.    Permafrost
     F.    High Precipitation

**Module V.**   **Regulatory Requirements**

     A.    DEC Wastewater Disposal General Permit – Excavation Dewatering
     B.    The most current version of the Environmental Protection Agency NPDES General Permit for Storm Water Discharges from Construction Activities, Permit No. AKR100000 (or as assumed by the State of Alaska)
     C.    Federal, state, MS4, and local requirements and permits
     D.    Other regulatory requirements

**Module VI.**   **Storm Water Pollution Prevention Plan (SWPPP) Elements and BMPs**

     A.    SWPPP is a living document – should be revised as necessary

Case 3:10-cv-00117-RRB   Document 7   Filed 08/04/10   Page 33 of 35

B.    12 Elements of a SWPPP & categories of BMPs – how to select and install BMPs
1. Mark Clearing Limits
2. Establish Construction Access
3. Control Flow Rates
4. Install Sediment Controls
5. Stabilize Soils and CGP Stabilization Requirement
6. Protect Slopes
7. Protect Drain Inlets
8. Stabilize Channels and Outlets
9. Control Pollutants
10. Control De-watering
11. Inspect and Maintain BMPs
12. Manage the Project SWPPP and related documentation, inspections, reports, revision logs, grading logs, weather logs, etc.

**Module VII.   Monitoring/Reporting/Recordkeeping**

A.    Site inspections/visual monitoring
1. CGP Inspection Frequency
2. Disturbed areas
2. BMPs
3. Discharge locations
4. Dewatering

B.    Water quality sampling/analysis
1. Turbidity
2. pH
3. Total Maximum Daily Load (TMDL)
4. Monitoring frequency set by SWPPP

C.    Adaptive Management
1. When monitoring indicates problem, take appropriate action (e.g. install/maintain/change/add BMPS or contact designer/engineer/consultant etc.)
2. Document the corrective action(s) in SWPPP, Revision Log and Plan sheet

D.    Site Plan/Map Grading Log

E.    Reporting
1. Inspection reports/checklists
2. Non-compliance notification event and/or bypass
3. HAZMAT reporting

F.    Record Keeping
1. Revision Log
2. Grading Log
3. SWPPP updates
4. Figures and Plan sheets

Case 3:10-cv-00117-RRB   Document 7   Filed 08/04/10   Page 34 of 35

## **Description of Training**:

The AK-CESCL course is a two-day course.

At the end of the course, a written exam is given. To be certified, a trainee must attend the course and pass the exam with at least a 70% score.

Certification is valid for three years.